**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JESSE NOAL KILLIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-CV-1432 JCH |
| | ) | |
| CORIZON HEALTHCARE LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of self-represented plaintiff Jesse Noal Killian for leave to commence this civil rights action pursuant to 42 U.S.C. § 1983 without prepayment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, the Court has reviewed the complaint and will dismiss it pursuant to 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff did not submit a certified copy of his inmate account statement, but based upon the information provided in his Application to Proceed in District Court Without Prepaying Fees or Costs, the Court will assess an initial partial filing fee of $1.00, which is an amount that is reasonable based upon the information before the Court. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must provide the Court with a certified inmate account statement.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded

facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

<h3 style="text-align:center">The Complaint</h3>

Plaintiff, an inmate at Eastern Reception Diagnostic and Correctional Center (ERDCC) brings this action on a Court-provided 'Prisoner Civil Rights Complaint' form pursuant to 42 U.S.C. § 1983 against Corizon Healthcare, LLC and Desiree Alexander, Certified Medical Technician.[1] Plaintiff sues Corizon in its official capacity. He sues defendant Alexander in her individual and official capacities.

In the Statement of the Claim section of the complaint, plaintiff alleges the following in its entirety:

On 9/4/2021 I was in a suicide camera cell #113 C Wing HU2, Desiree Alexander was at C-Wing #108 HU2. I was feeling woozy/dizzy because of a blood pressure

---

[1] Plaintiff claims that Ms. Alexander is employed by the State of Missouri. However, if she is a Medical Technician, she is likely employed by Corizon Healthcare, LLC.

3

medication called Clonidine that is used for my ADHD. I said the Med Tech Alexander['s] name multiple times to no avail. As where I fainted during med pass nightime I was bleeding from the nose. I then informed a COII for HU2 about the situation at hand to which he made sure he checked on me every (15) minutes by knocking on the door. I suffered a nose injury & possible concussion.

For relief, plaintiff seeks monetary damages and injunctive relief.

**Discussion**

Having carefully reviewed the complaint, the Court concludes that plaintiff's claims against defendants must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

**I.      Corizon Healthcare, LLC**

Plaintiff's claim against Corizon is subject to dismissal. Defendant Corizon is the private corporation contracted to provide medical services to prisoners at ERDCC. Other than naming Corizon as a defendant, plaintiff makes no allegations against this entity.

To prevail on an official capacity claim against Corizon, plaintiff must establish the liability of Corizon itself for the alleged conduct.  *See Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). In order to demonstrate such liability, plaintiff must show that the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

Plaintiff's complaint contains no allegations that any of defendant Alexander's actions towards plaintiff were the result of Corizon's official policy, unofficial custom, or its failure to train or supervise. Such allegations are necessary to state an official capacity claim. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a

4

policy or custom" that caused the alleged deprivation of plaintiff's rights). Furthermore, "[a] corporation acting under color of state law … will not be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007) (citing *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993)).

As a result, the complaint shall be dismissed as to the MDOC pursuant to 28 U.S.C. § 1915(e)(2)(B).

## II.    Official Capacity Claim Against Desiree Alexander

Plaintiff's official capacity claim against defendant Desiree Alexander, the Medical Technician, are subject to dismissal for the same reasons plaintiff's claims against Corizon Healthcare are subject to dismissal.[2]

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official.  *Will*, 491 at 71.

---

[2]To the extent that defendant Alexander is employed by the Missouri Department of Corrections (MDOC), the official capacity claims against her would also be subject to dismissal. Naming a government official in his official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri.  *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). *See also Kelly,* 813 F.3d at 1075 (stating a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id. See also Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) ("a state is not a person for purposes of a claim for money damages under § 1983"). Additionally, the Eleventh Amendment provides immunity to state officials who are sued in their official capacities. *See In re SDDS*, 97 F.3d 1030, 1035 (8th Cir. 1996). The Eighth Circuit has held that § 1983 does not abrogate the states' Eleventh Amendment immunity. *See Williams v. State of Missouri*, 973 F.2d 599, 600 (8th Cir. 1992) (Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. § 1983); *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (§ 1983 provides no cause of action against agents of the State acting in their official capacities).

To state a claim against a government official in his or her official capacity, plaintiff must allege that a policy or custom of the government entity is responsible for the alleged constitutional violation. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). According to the allegations of the complaint here, defendant Alexander is a Medical Technician at ERDCC. The State of Missouri has contracted with Corizon Healthcare to provide all medical care in its Department of Corrections facilities, including ERDCC. As such, defendant Alexander is a Corizon employee, and plaintiff's official capacity claims against Alexander are actually claims against Corizon.

To prevail on an official capacity claim against Corizon, plaintiff must establish the liability of Corizon itself for the alleged conduct. *See Marsh,* 902 F.3d at 751; *Kelly,* 813 F.3d at 1075. To demonstrate such liability, plaintiff must show that the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick*, 883 F.3d at 1079.

The instant complaint contains no allegations that defendant Alexander's alleged violations of plaintiff's constitutional rights were the result of an official Corizon policy, an unofficial Corizon custom, or a failure by Corizon to train or supervise its employees. Such allegations are necessary to state an official capacity claim. *See Ulrich,* 715 F.3d at 1061 (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, plaintiff's official capacity claims against defendant Alexander must be dismissed for failure to state a claim.

### III.     Individual Capacity Claim Against Desiree Alexander

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

To establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). A plaintiff attempting to claim deliberate indifference must establish both the objective and subjective components. *See Thompson v. King*, 730 F.3d 742, 746 (8th Cir. 2013). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). *See also Davis v. Buchanan County, Missouri*, 11 F.4th 604, 624 (8th Cir. 2021).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). *See also Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir.

2018) (explaining that "plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the arrestee's health"). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Plaintiff's allegations against defendant Alexander fail to allege an objectively serious medical need and that the defendant Alexander knew of such a need but failed to treat defendant. Plaintiff alleges that defendant Alexander, a Medical Technician, was handing out medications on "med pass" in Housing Unit 2 on September 4, 2021. At this time, plaintiff was incarcerated in suicide cell 113 and had already received his ADHD medication from plaintiff, Clonidine. He states that at some point after taking the medication, he began to feel woozy, or dizzy. However, by this time, defendant Alexander was already at least five cells away, somewhere around cell 108. Although plaintiff alleges that he "said" defendant Alexander's name "multiple times" to get her attention and tell her he felt dizzy, there is no indication that defendant Alexander heard her name being called by plaintiff in cell 113. In fact, plaintiff has not alleged defendant Alexander heard him calling her and ignored his request for assistance. Therefore, plaintiff has not properly alleged that defendant Alexander knew of plaintiff's request for medical need and failed to address such need.

Plaintiff has also failed to allege that he suffered a serious medical issue that required the involvement of a medical professional. "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman,* 114 F.3d at 784. The Eighth Circuit has determined that the following circumstances exhibit a serious medical condition: a pregnant inmate

8

who is bleeding and passing blood clots, *see Pool v. Sebastian Cnty., Ark.,* 418 F.3d 934, 945 (8th Cir. 2005); an inmate who is complaining of extreme tooth pain and presenting with swollen, bleeding gums, *see Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004); and a diabetic inmate who is experiencing excessive urination, diarrhea, sweating, weight loss, and dehydration, *see Roberson v. Bradshaw*, 198 F.3d 645, 647–48 (8th Cir. 1999).

Plaintiff asserts that he fainted and fell on his nose which caused it to bleed. He states that afterwards, he "informed a COII" about the situation, who checked on him every fifteen minutes by knocking on the door.[3] However, he does not indicate that he asked the correctional officer for examination of any injuries by a doctor or a nurse or other medical professional. *See Bell v. Voight*, No. CIV. 14–4111, 2015 WL 5257025, at *8 (D.S.D. Sept. 9, 2015) (holding that a bloody nose and bruises after a fight "is not sufficient to put defendants on notice that he had a broken facial bone" such that there could be a finding of deliberate indifference under the Eighth Amendment); *Smith v. Brown*, No. 4:16-CV-04014-LLP, 2018 WL 4658223, *19 (D.S.D. Sept. 27, 2018) (no detrimental effect in delaying plaintiff's visit to Health Services by five days when plaintiff had a bloody nose, a small cut across the bridge of his nose, and the nose slightly deviated to the right).

Instead, plaintiff states in a conclusory manner that he may have had a concussion. However, there are only plaintiff's conclusory allegations to support such a claim, and his failure to have asked for a doctor or nurse to examine his injuries at the time of the event belies his later belief that he may have had a concussion.[4] *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)

---

[3]Because plaintiff was in a suicide cell, the correctional officers were required to check on plaintiff regularly.

[4]The Court has reviewed numerous cases that concern § 1983 claims for the denial or delay of medical care for cuts, scrapes or lacerations. It cannot be said as a matter of law that every cut or scrape is a serious medical need that demands immediate medical attention. *See, e.g., Boyett v. County of*

(court will not supply additional facts or create a legal theory assuming facts that have not been pleaded).

As a result of the aforementioned, the Court finds that plaintiff has not properly alleged that he suffered from an objectively serious medical need, and that defendant Alexander actually knew of and disregarded that need.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff Jesse Noal Killian must pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name;

---

*Washington,* No. 2:04cv1173, 2006 WL 3422104, at *17 (D.Utah Nov. 28, 2006) (a "superficial head injury, even one requiring sutures, does not qualify as a serious medical need."). In some cases, cuts or lacerations are not severe enough to constitute serious medical needs, and whether stitches were required can be relevant to the analysis. *See, e.g., Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988) (police officers did not violate arrestee's constitutional rights by fourteen-hour delay in obtaining medical treatment for cut under his eye that had stopped bleeding and removal of quarter-inch piece of glass embedded in his palm because there was "no suggestion that the delay in taking him to the hospital exacerbated his injuries in any way"; while sliver of glass in detainee's palm "was no doubt uncomfortable," it nevertheless "was not a serious injury" and fourteen-hour delay in medical treatment "did not violate his constitutional rights" because cuts and bruises were "minor" and "did not require either stitches or painkiller"); *see also Fernandez v. Metro Dade Police Dep't*, 397 F. App'x 507, 512 (11th Cir.2010) (reversing denial of qualified immunity, holding arrestee failed to establish he suffered an objectively serious medical need where there was an eight-hour delay in providing medical treatment for injuries suffered during his arrest, including a bloody nose and mouth that lasted over five minutes, facial bruising, pain, disorientation and blood "clogs" in his nose, where upon examination at hospital he required no stitches or bandages and no medication other than non-prescription pain pills); *Montavon v. Town of Southington,* 1997 WL 835053, at *4 (D. Conn Sept. 29, 1997) (arrestee did not establish existence of objectively serious medical need based on cuts and scrapes where there was no evidence his bleeding was profuse or that he was experiencing other conditions and he did not request medical care while in police custody).

(2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint because the complaint fails to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED AS MOOT**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 8th day of March, 2022.

/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE